Joseph Slavin, J.
The plaintiff, suing pro se, seeks recovery of the sum of $2,000 for "money due (pension)” against the defendant, his former employer. The defendant has conceded, that if plaintiff prevails, he is entitled to the full $2,000. There is no formal answer, merely a notice of appearance, and therefore, the court deems that a general denial has been interposed.
Plaintiff was initially offered a job commencing June 11, 1973 as outlined in a letter to him from the defendant’s Brooklyn Borough Director, dated May 31, 1973. That letter contained the salary level and informed plaintiff as to "personal policy” concerning merit salary increases. Plaintiff began work on June 11, 1973.
At the outset of the employment, plaintiff was given a loose-leaf book entitled "Court Employment Project, Inc., Personnel Policy, Fiscal Year 1972-1973”. As testified to by defendant’s personnel manager, this was a manual given to every employee to outline their basic responsibilities and their benefits. He also testified that while a violation of the employee’s duties as outlined in the manual could lead to dismissal, it was not automatic. It was, however, the only "manual” given to employees outlining the fringe benefits of their employment.
When plaintiff was hired and given the manual, page 46 thereof (promulgated on June 1, 1973) read in part:
"HI. PENSION FUND AND DEFERRED SAVINGS PLAN
"PENSION FUND
"An employee is eligible to participate in the Pension Plan *554 after he/she has been employed for one month. [Emphasis supplied.]
"Under this plan, an amount based on 6% of the employee’s salary is paid weekly into the Pension Fund. (This amount is not deducted from the employee’s salary, but rather is paid by the Project.) The money is placed in a special savings account and accrues interest at a rate varying slightly from year to year. The current interest rate is 7%%.
"After one year, upon termination for any reason, the employee is eligible to receive the balance in the fund. She/he may elect to take a lump sum payment or to defer the balance for a future regulated retirement annuity. The minimum age for retirement is 55. Only at that point, can she/he elect to have the balance in the Pension Fund paid in regulated amounts. An employee who leaves before age 55 may have payment withheld until age 55, then paid out as a regulated annuity. Meanwhile, it continues drawing interest at the current rate. "An employee may not receive monies invested for him by the Project until he terminates employment.”
On July 1, 1973, this page 46 was changed and the new page distributed to this plaintiff as well as all other employees to insert in the manual and to remove the old page. It now read:
"pension fund
"An employee is eligible to participate in the Pension Plan after he/she has been employed for one month.
"Under this plan, an amount based on 9% of the employee’s salary is paid weekly into the Pension Fund. (This amount is not deducted from the employee’s salary, but rather is paid by the Project.) The money is placed in a special savings account and accrues interest at a rate varying slightly from year to year. The current interest rate is 7%%.
"After one year in the Plan (three years if hired after July 1, 1973) [emphasis supplied], upon termination for any reason, the employee is eligible to receive the balance in the fund. She/he may elect to take a lump sum payment or to defer the balance for a future regulated retirement annuity. The minimum age for retirement is 55. Only at that point, can she/he elect to have the balance in the Pension Fund paid in regulated amounts. An employee who leaves before age 55 may *555 have payment withheld until age 55, then paid out as a regulated annuity. Meanwhile, it continues drawing interest at the current rate.
"An employee may not receive monies invested for him by the Project until he terminates employment.”
Plaintiff continued in defendant’s employ until October 31, 1975 when he voluntarily resigned. He was employed for 27 months. He thereafter made a request for the accummulated "balance in the fund”, which payment was refused.
The defendant claims that plaintiff was not entitled to receive the accumulated fund allocated to him based upon the provisions of the pension plan.
The pension plan in effect on June 11, 1973 (the day of plaintiff’s employment), provided in: "Article II Participation and Eligibility Section 2.01 eligibility. Each employee who meets the following eligibility requirements shall be eligible for coverage under this Plan as of the Effective Date of the first day of the month thereafter when he first fulfills all such requirements: He has completed one month of service.”
Defendant also points out to the court section 11.01 of article XI of the pension plan. Under the authority of this article, the plan was modified as of July 1, 1973 to change the 6% to 9% (compare the two pages No. 46 quoted above) and to add a requirement of "three years [employment] if hired after July 1, 1973”. (Emphasis supplied.)
Defendant freely admitted that the pension plan and its amendments were not given to any employee. If someone wanted a copy, they had to ask a supervisor in order to obtain one. Also that there was no one assigned to explain to employees, who might inquire, what their fringe benefits were. Again, it was necessary to go to a supervisor to see the information, if available.
Defendant asserts that section 2.01 of article II fixes "eligibility” to be on the first day of the month after "he has completed one month of service”. The defendant claims that the eligibility began not on July 11 but on August 1, 1973. Further, defendant urges that this means, in effect, that he was "hired after July 1, 1973” and does not, therefore, meet the three-year employment requirement adopted as of July 1, 1973.
It appears to the court, that defendant seeks to avoid liability for payment on a theory that the plaintiff is bound by *556 something he has no notice of and which is more restrictive than the notice actually given him upon employment.
I find that the plaintiff was entitled to believe that his pension rights began 30 days after the start of this employment and not as defendant urges.
Plaintiff had the right to rely on an official publication given to him as part of his employment, even if the employer erred in the preparation of the language. (Sugarman v Beame, NYLJ, Feb 10, 1976, p 10, col 6.)
It is axiomatic that a written document is to be construed against the party who prepared it where there are ambiguous or contradictory provisions (Consolidated Gas Supply Corp. v Matual, 42 AD2d 656; Morris v Government Employees Ins. Co., 77 Misc 2d 1057), and not to permit, in effect a change, in midstream, to his detriment. (Walkes v Jarcho, 51 AD2d 697.)
Accordingly, I award judgment for the plaintiff for $2,000 plus interest from November 31, 1975 together with costs and disbursements.