J. Warren GRATIAN, Plaintiff-Appellant,

v.

GENERAL DYNAMICS, INC.,
Defendant-Appellee.

No. 63, Docket 78–7223.

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1978.

Decided Nov. 15, 1978.

Branch, Turner & Wise, Rochester, N. Y. (Charles S. Turner, Rochester, N. Y., of counsel), for plaintiff-appellant.

Nixon, Hargrave, Devans & Doyle, Rochester, N. Y. (William D. Eggers, Rochester, N. Y., of counsel), for defendant-appellee.

Before WATERMAN and MULLIGAN, Circuit Judges, and WYATT, District Judge.*

PER CURIAM:

This appeal is from a judgment for defendant directed in a jury trial at the close of the evidence offered by plaintiff. We affirm the judgment for defendant.

Plaintiff Gratian was employed at Rochester for 25 years by defendant General Dynamics, Inc. (Dynamics) and its predecessor. He was a member of the Retirement Plan of Dynamics (the Plan).

At the end of 1970 the Dynamics plant at Rochester was closed. Gratian decided not to continue working for Dynamics at a plant away from Rochester. His employment with Dynamics was therefore terminated as of January 1, 1971. He was then 52 years old, not eligible under the Plan for normal retirement (age 65) nor for early retirement (age 55).

Dynamics agreed with Gratian that he was entitled to a monthly benefit under the Plan beginning at age 55. Dynamics took the position that the amount of such benefit was to be calculated according to the formula in the Plan for those whose employ-

* Of the Southern District of New York, sitting by designation.

ment was terminated "otherwise than by retirement." Gratian insists (Brief for appellant, p. 4) that he is entitled to "full early retirement benefits", the higher monthly benefit calculated according to the formula for those who *retire* early. This action was commenced to recover the difference in the two amounts (Dynamics has been regularly paying the lower monthly amount) and to compel payment of the higher amount in the future. Jurisdiction rests on diversity of citizenship.

In taking this case from the jury at the close of plaintiff's case, the District Court violated a very old and a very sound principle of judicial administration. It is usually much better to take all the evidence and submit the case to the jury than to direct a verdict. The trial judge may then, if he believes that the evidence is not sufficient to support a verdict for plaintiff, set it aside. Should an appellate court disagree with the trial judge, the verdict may be reinstated and the time and expense of a second trial avoided. *See Lindeman v. Textron, Inc.*, 229 F.2d 273, 276 (2d Cir. 1956); *Fratta v. Grace Line, Inc.*, 139 F.2d 743, 744 (2d Cir. 1943); 9 Wright and Miller, Federal Practice and Procedure, § 2533, pp. 585–586 (1977); 5A Moore's Federal Practice, ¶ 50.-05[3], pp. 50–61 to 50–62 (1977).

While we feel required thus to point out the departure here from sound practice, a study of the record establishes that the result in this instance was nevertheless correct. The evidence for plaintiff will not support any recovery by him.

The argument for Gratian recognizes and concedes that he is being paid what he is entitled to receive under the provisions of the Plan.

To sustain his claim to be paid more than the Plan provides, Gratian relies on representations said to have been made to him outside the Plan itself. These representations are said to be contained in (a) yearly statements of contributions and benefits (sometimes called "punch cards" in the briefs) furnished to Gratian and other employees by Dynamics, and (b) a memorandum dated May 16, 1969, signed by A. G.

Daubert, General Manager (sometimes called the "Daubert letter" in the briefs).

The argument for Gratian is that in the punch cards and in the Daubert letter it was represented to him that if the employment of a member of the Plan having more than ten years of continuous service is terminated *otherwise than by retirement,* that member is entitled to have his monthly benefit calculated under the plan exactly the same as for a member who retires at age 55.

If either the punch cards or the Daubert letter purported to be a summary of the plan, Dynamics might well be precluded from relying on inconsistent provisions of the Plan itself. Such seems to be the reasoning in the decisions on which Gratian here relies, such as *Gillette v. Heinrich Motors, Inc.*, 55 A.D.2d 841, 390 N.Y.S.2d 330 (4th Dept. 1976), *aff'd,* 44 N.Y.2d 661, 405 N.Y.S.2d 33 (1978), and *Gould v. Continental Coffee Co.*, 304 F.Supp. 1 (S.D.N.Y. 1969). But neither the punch cards nor the Daubert letter was, or purported to be, a summary of the Plan. Gratian was not justified in relying on either the cards or the letter. He knew at all times that the provisions of the Plan were contained in a written document; indeed, the cards expressly stated that their information was "subject to and governed by the provisions of the Plan."

Even if Gratian be permitted to rely on representations said to be in the punch cards and in the Daubert letter, they afford not the slightest support for his claim.

The punch cards do not represent anything about *how* monthly benefits are to be calculated for anybody. The only statement is about the effect of certain elections if made by specified categories of members (which categories do *not* include Gratian).

The Daubert letter likewise gives no support to the argument for Gratian.

The first paragraph on which Gratian relies in that letter has nothing whatever to do with the calculation of monthly benefits. It has only to do with "vesting" and it

explains that an age requirement for vesting has been eliminated.

The second paragraph on which Gratian relies explains an amendment to the plan granting more favorable treatment in calculating monthly benefits "for those who retire between age 55 and 60".

There is only one possible meaning of the quoted phrase, namely, that it refers to those who, between age 55 and 60, take "early retirement" under Section V, paragraph 1(b) of the Plan.

 But Gratian argues that in the Daubert letter, the word "retire" in the quoted phrase means "retirement under the Plan and beginning to receive benefits rather than retirement from the employ of the company" (Brief for appellant, p. 20, also pp. 6, 18). Elsewhere the argument is expressed (Brief for appellant, p. 20): ". . . a person may retire from a number of jobs and not begin 'retirement' until sometime later when he begins to receive benefits under the retirement plans of which he is a member". And elsewhere (Reply Brief for appellant, p. 2): " '[R]etirement' means the time at which a former employee begins to receive benefits under the retirement plan and has nothing to do with the time at which the employee leaves the company."

To argue that "retire" as used by Daubert meant "retirement under the plan" is not to support, but to defeat, the claim made for Gratian here. If anything is clear, it is that Gratian's leaving Dynamics at age 52 is *not* included in the phrase "retirement under the plan". There are three definitions of "retirement" in the Plan (Section V, paragraph 1): "normal retirement", "early retirement", and "late retirement". Gratian fits under no one of these definitions.

To argue that "retire" as used by Daubert meant "beginning to receive benefits rather than retirement from the employ of the company" is to ignore what is perfectly plain.

The word "retire" has no meaning in the dictionary (Webster's Third International Dictionary, p. 1939) which would include, or cover, or even be consistent with, "beginning to receive benefits". The word has nothing to do with the receipt of anything, benefits or otherwise. It means to withdraw from business or occupation or active duty. To say that "retire" as used by Daubert means "beginning to receive benefits" is thus to stand language on its head.

There is nothing on the punch cards or in the Daubert letter which is in any way inconsistent with the Plan.

When the employment of Gratian by Dynamics terminated, it was not the result of "retirement" because he was not eligible at age 52 to retire. His employment terminated "otherwise than by retirement" (the wording of the Plan) and he is receiving all the benefits to which he is entitled.

The judgment of the District Court is affirmed.